Gerald H. Ehrlich and Ilse Ehrlich, et al. [1] v. Commissioner. Ehrlich v. Commissioner
Docket Nos. 1928-69, 1929-69, 1930-69, 1931-69, 1932-69.
United States Tax Court
T.C. Memo 1971-76; 1971 Tax Ct. Memo LEXIS 257; 30 T.C.M. (CCH) 317; T.C.M. (RIA) 71076; April 19, 1971, Filed Irwin G. Waterman, 600 Marion E. Taylor Bldg., Louisville, Ky., for the petitioners. Robert T. Hollohan, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' income taxes: Taxpayers
Taxable yearended
Deficiency
Gerald H. Ehrlich and Ilse Ehrlich
Dec. 31, 1964
$ 476.10
Dec. 31, 1965
529.82
Dec. 31, 1966
479.34
Frisch Dixie, Inc.
Nov. 30, 1964
$4,625.60
Nov. 30, 1965
3,436.12
Nov. 30, 1966
3,389.82
Frisch Southside, Inc.
July 31, 1964
$ 919.03
July 31, 1965
906.02
July 31, 1966
628.08
Highland Frisch, Inc.
Sept. 30, 1962
$ 691.42
Sept. 30, 1963
97.79
Sept. 30, 1964
2,112.85
Sept. 30, 1965
1,035.02
Sept. 30, 1966
2,132.83
Curtis H. Ehrlich and Inge R. Ehrlich
Dec. 31, 1964
$1,711.04
Dec. 31, 1965
1,788.10
Dec. 31, 1966
1,790.00
*258 The parties have disposed of all issues except those relating to the deductibility under section 162(a)(1) [2] as ordinary and necessary business expenses of portions of the amounts paid by the corporate petitioners to Curtis Ehrlich and Inge Ehrlich as compensation for services rendered during the years in question. [3]
*259 Findings of Fact Some of the facts have been stipulated and are found accordingly. Those facts and the exhibits attached to the stipulation are incorporated herein by this reference. Petitioners Gerald H. Ehrlich and Ilse Ehrlich, husband and wife (hereinafter sometimes referred to as "Gerald" and "Ilse," respectively), had their legal residence in Louisville, Kentucky, at the time they filed their petition herein. They filed joint Federal income tax returns for the calendar years 1964, 1965, and 1966 with the district director of internal revenue at Louisville, Kentucky. Petitioners Curtis H. Ehrlich and Inge R. Ehrlich, husband and wife (hereinafter sometimes referred to as "Curtis" and "Inge," respectively), had their legal residence in Louisville, Kentucky, at the time they filed their petition herein. They filed joint Federal income tax returns for the calendar years 1964, 1965, and 1966 with the district 313 director of internal revenue at Louisville, Kentucky. Frisch Dixie, Inc., is a Kentucky corporation whose principal place of business was located at Louisville, Kentucky, at the time it filed its petition herein. All the outstanding and issued capital stock *260 of Frisch Dixie, Inc., is owned equally by Curtis and Inge. The corporation filed its Federal income tax returns for the fiscal years ended November 30, 1964, November 30, 1965, and November 30, 1966 with the district director of internal revenue at Louisville, Kentucky. Highland Frisch, Inc., is a Kentucky corporation whose principal place of business was located at Louisville, Kentucky, at the time it filed its petition herein. All of the outstanding and issued capital stock of Highland Frisch, Inc., is owned equally by Curtis and Inge. The corporation filed its Federal income tax returns for the fiscal years ended September 30, 1962, September 30, 30, 1963, September 30, 1964, September 30, 1965, and September 30, 1966 with the district director of internal revenue at Louisville, Kentucky. Frisch Southside, Inc., is a Kentucky corporation whose principal place of business was located at Louisville, Kentucky, at the time it filed its petition herein. All of its outstanding and issued capital stock is owned equally by Curtis and his brother, Gerald. The corporation filed its Federal income tax returns for the fiscal years ended July 31, 1964, July 31, 1965, and July 31, 1966 with *261 the district director of internal revenue at Louisville, Kentucky. Curtis, president of the three corporate petitioners herein, and his wife, Inge, also an officer of each corporation, have been in the restaurant business for some twenty-three years. From 1947 until 1955, they operated several cafeterias in and about Cincinnati, Ohio. Each of them participated directly and fully in all phases of management and operations and, as a consequence, acquired substantial expertise in the field of purveyors of meals to the public. In 1955, their cafeteria venture terminated for reasons beyond their control. Thereafter, Curtis and Inge sought again to establish themselves in business and finally settled on a franchise from Frisch's Restaurants, Inc., involving the operation of a restaurant which offered fast food service and drive-in facilities. Although their experience in the previously conducted cafeteria operations was of some benefit, the fast food service and drive-in business is a different field. Accordingly, Curtis and Inge worked as non-salaried trainees for a three-month period at two established Frisch restaurants. In December 1955, Curtis and Inge opened their first franchised *262 restaurant in Louisville, Kentucky. The restaurant was located on leased premises which they designed and equipped. Originally it had 86 inside seats and a parking lot for 100 cars. At all times pertinent, it has operated through the corporate vehicle of Frisch Dixie, Inc. During the early period of operation, difficulties were encountered in finding experienced help, in obtaining major items of food supplies from the Frisch commissary located in Cincinnati, and in attracting business to the new restaurant. By dint of long hours and hard work on the part of both Curtis and Inge, the restaurant finally was successfully established. Fourteen months after the opening of the Frisch Dixie restaurant, Curtis and Inge obtained another Frisch franchise for the Louisville area. In this instance, the corporate vehicle of Highland Frisch, Inc., was used. Both Curtis and Inge participated in all phases of the physical and financial planning and development of this business, including the location, design, and equipping of the building. Initially, the restaurant seated 64 people with 40 outside parking spaces. Curtis' brother, Gerald, was persuaded to move his family from South Africa and, after *263 being trained, principally by Inge, he became the manager of the Highland Frisch restaurant. In 1959, another restaurant - this one operated by Frisch Southside, Inc. - was opened. It had 98 seats and 52 outside parking places. Here again Curtis and Inge, this time with the help of Gerald, did all the planning and design work connected with the operation. By 1959, and throughout the years at issue herein, the Ehrlichs were operating a business which grossed approximately $800,000 annually. The three restaurants employed 85 people, of which about 30 each were employed by Frisch Dixie, Inc., and Frisch Southside, Inc., and 25 by Highland Frisch, Inc. The rate of turnover of personnel was high. Although each restaurant had a day and night manager, both Curtis and Inge were directly involved in all phases of the three businesses. They worked long hours, often beginning very early in the dawn hours and extending late into the 319 evening. Sunday was a day of work. As of the time of trial Curtis' last vacation was in 1960. Curtis and Inge supervised the maintenance of a detailed and time-consuming internal cost control system which they had personally designed. Detailed records *264 were kept of sales by category of food, of other incidental items such as cigarettes and telephone calls, and of inside and outside sales, weather, employee hours worked, payroll, inventory on an item-by-item basis, etc. These records were used by Curtis and Inge for planning and controlling all phases of operations, including a comparison with expense statistics of other Frisch franchised operations. Curtis ordered supplies of food and other needed items and handled the purchase of equipment - an area in which there are frequent developments in the drive-in and fast food service business. Curtis expended considerable effort in keeping abreast of these developments as well as the frequent changes in methods of operations of this type of business. Inge often assisted Curtis in his purchasing activities. Inge participated fully in the management and supervision of all three restaurants. She also had the major responsibility for training new employees. She worked in the office, cheeked the books, and made bank deposits. She was well versed in all phases of the businesses and was in full charge whenever Curtis and Gerald were away. She worked in excess of thirty-five hours a week in *265 1964 and 1965 and slightly less in 1966. Frisch franchise owner-managers normally draw compensation of $20,000 annually for each store. Frisch employee-managers for individual restaurants earn from $7,500 to $13,000 annually. Employee-managers do not have overall responsibility for running the business. The Frisch Company also employs supervisors who handle from four to eight restaurants each. In comparison with those Frisch restaurants whose records are maintained by Frisch's Restaurants, Inc., the franchises of the corporate petitioners herein ranked among the best 5 to 10 percent of the Frisch franchises in keeping down the controllable costs-sales ratio during the years in question. Curtis fixed the compensation of the key employees of the corporate petitioners. Curtis, Inge, and Gerald received both salaries and bonuses. There was no predetermined formula for bonuses and they were usually determined toward the end of the year. The bonuses were paid in recognition of the long hours which the key employees worked and their contribution to the success of the restaurants. In part, they represented payments in good years for services in prior years when inadequate compensation *266 had been paid. Additionally, in the case of Inge, the bonuses paid to her in 1964 and 1965 were paid to her because of the added responsibilities and duties which she assumed when Curtis and Gerald were out of Louisville in connection with new business ventures. During fiscal years 1956 through 1963 of Frisch Dixie, Inc., the compensation paid to Curtis and Inge was in amounts within the following approximate ranges: Curtis
$14,000 to $27,500
Inge
$ 7,600 to $11,000
During the fiscal years 1959 through 1963 of Highland Frisch, Inc., the compensation paid Curtis, Inge, and Gerald was in amounts in the following approximate ranges: Curtis
$ 2,600 to $ 6,600
Gerald
$10,000 to $14,000
Inge
$ 5,200 to $ 7,700
Frisch Southside, Inc., paid compensation of $7,050 each to Curtis and Gerald and $7,814 each in its fiscal years 1962 and 1963, respectively. The following table shows the pertinent data: 320 Total com-
Total com-
pensation
pensation
Fiscal
claimed
Bonus
Portion
claimed
year
paid to
compo-
disal-
paid to
ending
Curtis
nent
lowed
Inge
**
Frisch Dixie, Inc.
11-30-64
$22,685
$7,000
$5,447
$ 7,843
11-30-65
22,644
7,000
4,647
10,822
11-30-66
20,642
5,000
3,512
7,821
Highland Frisch,
9-30-64
6,229
1,000
1,502
6,229
Inc.
9-30-65
5,215
1,358 5,215
9-30-66
5,214
784
5,214
Frisch Southside,
7-31-64
7,859
2,020
Inc.
7-31-65
12,821
5,000
2,538
7-31-66
9,823
2,000
1,849
*267 Taxable in-
come exclu-
sive of deduc-
Bonus
Portion
tions for
compo-
disal-
Taxable
Gross
Gross
officers' com-
nent
lowed
income
sales
profit
pensation *
Frisch Dixie, Inc.
$4,931
$11,762
$283,422
$190,818
$42,290
$3,000
7,338
9,378
301,369
199,052
42,844
4,701
6,679
284,030
186,378
35,142
Highland Frisch,
1,000
3,941
3,592
212,708
140,338
20,756
Inc.
3,499
(2,304)
188,811
124,655
12,227
3,134
(326)
195,695
128,162
10,102
Frisch Southside,
15,441
307,310
208,405
36,398
Inc.
8,435
328,654
221,278
39,292
9,343
318,238
210,437
38,700 321 Ultimate Finding of Fact The amounts paid *268 by each of the corporate petitioners as compensation to Curtis and Inge Ehrlich during the years in question constitute reasonable compensation for services rendered. Opinion In a case such as this, we are faced with a pure question of fact - did the amounts paid to Curtis and Inge Ehrlich by the corporate petitioners herein constitute "a reasonable allowance for salaries or other compensation for personal services actually rendered" so as to be deductible under section 162(a)(1)? As our ultimate finding of fact reveals, we conclude that this question should be answered in the affirmative. Our conclusion is based upon our analysis and evaluation of the record as a whole; we have set forth in our findings of fact only those subsidiary factual elements which we deem minimally necessary to an understanding of that conclusion. We have, of course, been mindful of the fact that the burden of proof as to reasonableness is on the taxpayer. ; , affd. (C.A. 10, 1967). We also have taken into account the admonition that careful consideration is the order *269 of the day where a closely held family corporation is involved, particularly when the payments made are based upon informally determined salaries and year-end bonuses. See (C.A. 2, 1964); (C.A. 6, 1964); . Petitioners' evidence was thoroughly and completely presented. Curtis and Inge testified at length as to the details of the business and of the services which they rendered. We found their testimony, as well as the corroborating testimony of Gerald, forthright and convincing. In addition, we had the benefit of the uncontradicted and persuasive testimony of an expert witness with respect to compensation paid to Frisch franchise owner-managers such as Curtis and Inge. Against this, respondent offered no witnesses of his own and only the vaguest of arguments to sustain the disallowances in question. Indeed, we have not been able independently to evolve any understandable formula by which respondent arrived at those disallowances - for aught that appears, the amounts could have been drawn *270 from a hat. We are satisfied that, on the basis of the record before us, petitioners have carried their burden. The record contains some evidence that the compensation paid to Curtis or Inge by each corporate petitioner may not have been strictly in proportion to the value of the services rendered to that petitioner. We are not, however, disposed to indulge in such refinements, since respondent has not argued the point and, in any event, we are satisfied that each corporate petitioner received the full quid pro quo for the compensation paid by it. For similar reasons, we do not decide the extent to which the compensation-services-rendered proportion should be analyzed to take into account evidence that some of the services for which compensation was paid were rendered to subsidiaries of corporate petitioners herein. See . Compare . To reflect the disposition of other issues, Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Frisch Dixie, Inc., a Kentucky corporation, Docket No. 1929-69; Frisch Southside, Inc., a Kentucky corporation, Docket No. 1930-69; Highland Frisch, Inc., a Kentucky corporation, Docket No. 1931-69; Curtis H. Ehrlich and Inge R. Ehrlich, Docket No. 1932-69.↩
2. All references herein are to the Internal Revenue Code of 1954, as amended. ↩
3. At the conclusion of the trial, the Court made findings relating to the business versus personal use of certain automobiles owned by the corporate petitioners herein and the portion of the expenses with respect to these automobiles deductible by the corporate petitioners and the portion nondeductible by such petitioners and taxable as dividends to the individual petitioners herein. On brief, the parties have accepted these findings and the results thereof will be taken into account in the Rule 50 computations. In Docket No. 1928-69, there was an issue as to a $100 deduction for automobile expense for each of the taxable years 1964, 1965, and 1966. Counsel for petitioners stated at the opening of trial that no proof would be offered as to this item. In light of this statement and the paucity of evidence actually tendered, that issue is deemed conceded by petitioners.↩
**. All figures have been rounded off to the nearest dollar.↩
*. With respect to Highland Frisch, Inc., this column also excludes deductions for compensation paid to Gerald of $4,706 in f/y/e 1964 and $4,101 in f/y/e 1965, and, with respect to Frisch Southside, Inc., it excludes compensation paid to Gerald of $13,098 in f/y/e 1964, $18,036 in f/y/e 1965, and $19,534 in f/y/e 1966. None of these amounts is at issue herein. ↩